## WEST JERSEY AND SEASHORE RAILROAD COMPANY ET AL., PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., DEFENDANTS.

## ATLANTIC CITY RAILROAD COMPANY ET AL., PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., DEFENDANTS.

Argued January 22 and 23, 1930—Decided March 7, 1930.

Before Justices PARKER, BLACK and BODINE.

For the prosecutors, *Harry V. Osborne* and *Floyd H. Bradley* (*Clifford A. Baldwin,* on the brief).

For the board of public utility commissioners, *John O. Bigelow.*

For the Public Service Co-ordinated Transport, *William H. Speer.*

For Union Bus Company et al., *Emerson L. Richards.*

PER CURIAM.

These cases were ably argued and fully briefed. They have also received the consideration that is their due.

The attack is on an order made by the board of public utility commissioners on June 27th, 1929, relating to the

operation of public buses on the White Horse Pike running from Camden to Atlantic City. The effect of the order is to permit the operation of five local buses by Public Service Co-ordinated Transport between Egg Harbor City and Berlin, in addition to its pre-existing service between Camden and Berlin and Hammonton, and Atlantic City and Egg Harbor; such buses to be restricted to local business; of ten through buses by the Pennsylvania General Transit Company, affiliated with the West Jersey and Seashore Railroad Company, between Camden and Atlantic City; of ten through buses by the Reading Transportation Company, affiliated with the Atlantic City Railroad Company, between the same points; and of three through buses by the White Way Tours, three by the Parlor DeLuxe Coach Company, and four by the Union Bus Company between the same points. The last three concerns operate under one management, called the O. G. Schultz management, and the Union company buses are routed by way of Pleasantville, a slight detour to the south. The total number applied for was one hundred and thirty-five, which the board reduced to thirty-five, deeming that number adequate.

The principal part of the attack is by the two railroad companies and their affiliated bus lines, on the exclusive privileges for local traffic thus granted to the public service buses. Prior to this decision by the board, which was made after public hearings lasting over some three months, in which all parties concerned were fully heard, there had been no local bus service at all between Egg Harbor and Hammonton, a distance of eleven miles. The public service had operated between Camden and Berlin with one bus going as far as Hammonton. In 1928 the Public Service Co-ordinated Transport applied for leave to extend its service to Atlantic City, and the board refused a permit. Then it acquired the franchise of a local line operating between Atlantic City and Egg Harbor, which still left the gap of eleven miles between Egg Harbor and Hammonton, and on January 20th, 1929, applied for leave to close that gap and increase the Hammonton-Berlin service. The present prosecutors resisted this, and in March and April

countered with applications to supplement the existing railroad service with twenty-five buses each. The three other companies, viz., the O. G. Schultz management, at the same time asked for twenty or more buses each. The board heard all the applications together and decided on a total of thirty-five buses, distributed as above stated.

Reams of paper have been filled with the testimony and exhibits submitted to the board and briefs of counsel, but the ultimate points for decision are as usual quite simple. Did the board have jurisdiction? Undeniably it did. Was there evidence to support its determination? Unquestionably there was. Was that determination unreasonable, and particularly, were property rights infringed thereby? This seems to be the crux of the dispute. Unless the prosecutors have shown that this question should be answered in the affirmative, their attack fails.

Taking up the exclusive local service: As a result of the order, the public service may operate buses to Berlin from the Camden end, and operate other buses from Atlantic City to Berlin; so that anyone who cares to ride between Camden and Atlantic City on a local bus making an indefinite number of stops, with a change to another similar bus at Berlin, will have the privilege of so doing. It may fairly be surmised that the resulting encroachment on the through business of the railroads and the business of through bus lines is negligible. But the railroads claim that the local bus trade will cut into the local business by railroad; to which the reply is made, and satisfactorily to us, that as the railroads relied for almost all their passenger business on fast through trains, of which as a matter of common knowledge large numbers are operated every day, and local service was limited to one or two trains each way, it is difficult to see how they have been or will be injured to any appreciable extent by local bus facilities. If, as they claim, they are entitled as public utilities to protection against destructive competition, it should be a competition with a service which they have been giving. Then as to the bus lines affiliated with the railroads; they made no move toward a permit for over two months after

the application of the public service was on file. We deem that the board was fully justified in deciding that the public would be best served by assigning this new field to a corporation which had thus demonstrated its interest in supplying the public need and its ability to satisfy it, instead of turning that field over to a perhaps destructive competition by lines which theretofore had shown no interest in the matter.

It seems unnecessary to say more on this phase of the case. As to the permits to the Schultz lines, these latter are primarily interstate and to that extent not under control of the board. It is not at all clear that they work any substantial harm to the railroads, for as intimated in the testimony and as is fairly plain to even the casual observer, the enormous growth of the private automobile as a means of transport, coupled with the existence of a great state road from Camden to Atlantic City and the facilities of the new bridge over the Delaware at Camden, are quite enough to account for the falling off in the business of trains operating from fixed termini and on a fixed schedule.

We find, therefore, no infirmity in the decision reached by the board, and the writs of *certiorari* are accordingly dismissed.